UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH E. WILLIAMS, JR. | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-06-CV-1120 OG (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   Hon. Orlando Garcia
United States District Judge

### I. Introduction

Plaintiff Joseph E. Williams, Jr., brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Williams was not disabled for the purposes of the Social Security Act (the Act) and denying Williams's application for Disability Income Benefits (DIB). Williams asks the district court to reverse the decision and to render judgment in his favor. After considering Williams's brief in support of his complaint,[1] the brief in support of the Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

---

[1] Docket entry # 13.

[2] Docket entry # 14.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[3]

## II. Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. Administrative Proceedings

Based on the record in this case, Williams exhausted his administrative remedies prior to filing this action in federal court. Williams applied for DIB on June 2, 2004, alleging disability beginning April 1, 2004.[4] The Commissioner denied the application initially and on reconsideration.[5] Williams then asked for a hearing before an ALJ and amended his alleged onset date to January 1, 2003.[6] A hearing was held before an ALJ on October 4, 2005.[7] The ALJ issued a decision on May 10, 2006, determining that Williams was insured for disability benefits until December 31, 2003, and concluding that Williams was not disabled within the meaning of the Act during any time prior to the date he was last insured.[8] Williams then asked for review of

---

[3] *See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4] SSA record, p. 55.

[5] *Id*. at pp. 20, 21, 30 & 37.

[6] *Id*. at p. 41.

[7] *Id*. at p. 188.

[8] *Id*. at p. 12.

2

the decision on July 18, 2006.[9]  The Appeals Council denied the request for review on October 12, 2006 after determining that no basis existed for reviewing the ALJ's decision.[10]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  Williams filed this action seeking review of the Commissioner's decision on January 9, 2007.[11]

### IV.  Issue Presented

> Is the ALJ's decision that Williams was not under a "disability," as defined by the Act, at any time between Williams's alleged onset date of January 1, 2003 and his last date insured of December 31, 2003, supported by substantial evidence and does the decision comport with relevant legal standards?

### V.  Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[12]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]  Substantial evidence

---

[9]*Id*. at p. 8.

[10]*Id*. at p. 4.

[11]*See* complaint, docket entry # 4.

[12]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[13]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

"must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive DIB benefits.[19] The term

---

[14]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[15]*Martinez*, 64 F.3d at 173.

[16]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[17]*Martinez*, 64 F.3d at 174.

[18]*Id*.

[19]42 U.S.C. § 1382(a)(1) & (2).

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[21]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[22]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[23]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[24]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[25]  The second step involves

---

[20] 42 U.S.C. § 1382c(a)(3)(A).

[21] 42 U.S.C. § 1382c(a)(3)(B).

[22] 20 C.F.R. §§ 404.1520 and 416.920.

[23] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[24] 20 C.F.R. §§ 404.1520 and 416.920.

[25] *Id*.

determining whether the claimant's impairment is severe.[26]  If it is not severe, the claimant is deemed not disabled.[27]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[28]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[29]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[30]  If the claimant is still able to do his past work, the claimant is not disabled.[31]  If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[32]  If the claimant cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[33]  Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period

---

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Leggett*, 67 F.3d at 564.

of time.[34]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[35]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four of the evaluation process. The ALJ first determined that Williams's earnings record showed that Williams acquired sufficient quarters of coverage to remain insured through December 31, 2003.  To be eligible for disability benefits, a person must be fully insured.[36]  Because Williams was insured through December 31, 2003, the ALJ sought to determine whether Williams was disabled on or before that date.

At step one, the ALJ determined that Williams had not engaged in substantial gainful activity at any time relevant to the decision.[37]  Williams left his last job as a custodian in February 1998 to care for his father and has not worked since that time.[38]  In step two, the ALJ determined that Williams is impaired by bipolar disorder[39] and thoracic spondylosis.[40]  The ALJ

---

[34]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[35]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[36]*See* 20 C.F.R. § 404.110.  "To be fully insured, a person needs at least six quarters of coverage, but not more than forty quarters of coverage."  NAT'L ORG. OF. SOC. SEC. CLAIMANTS REPRESENTATIVES, 1-2 SOC. SEC. PRACTICE GUIDE § 2.03 (LexisNexis).  The formula for determining fully insured status is a little more complicated than that, but Williams does not challenge the Commissioner's determination about his date last insured.

[37]SSA record, p. 14.

[38]*Id*. at p. 202.

[39]Bipolar disorder is a "mood disorder marked by the occurrence of one or more manic episodes (irritable or elevated mood, excessive self-esteem, talkativeness) that alternate with major depressive episodes (loss of interest in one's activities, disturbance of sleep, loss of appetite, difficulty in

characterized these impairments as severe.[41]  In step three, the ALJ determined that Williams's impairments did not meet or medically equally one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1) prior to the date last insured.[42]  Williams's thoracic spondylosis does not meet section 1.04 (disorders of the spine) of Appendix 1 because Williams has no neurological deficits and has a full range of motion in the spine.[43]  His bipolar disorder does not meet section 12.04 (affective disorders) because his condition satisfies only "B" criteria for the listing.[44]  In step four, the ALJ determined that Williams had the following residual functional capacity: Williams can lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk 6 hours out of an 8-hour day; sit 8 hours out of an 8-hour day; frequently climb ramps, stairs, ladders, ropes, and scaffolding; frequently balance, bend, stoop, kneel, crouch, and crawl; moderate limitations in his ability to maintain attention and concentration for extended periods (more than 2 hours at once), interact appropriately with the public, interact appropriately with supervisors, and respond appropriately to changes in a routine work environment.[45]  The

---

thinking, etc.).  If the manic and depressive episodes alternate every few days, the disorder is called mixed bipolar disorder. If the episodes do not alternate at this rate, the condition is named on the basis of the last episode, *i.e.*, either manic bipolar disorder or depressive bipolar disorder." J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 1-B 2573 (Matthew Bender 2005).

[40]SSA record, p. 14.

[41]*Id.*

[42]*Id.*

[43]*Id.* at pp. 14 & 105.

[44]To meet the listing, the claimant must satisfy both "A" and "B" criteria, or satisfy "C" criteria. *See* 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.04.

[45]SSA record, p. 15.

ALJ determined that Williams has no limitation on his ability to understand, remember, and carry out detailed instructions, or to interact appropriately with co-workers. Based on this residual functional capacity, the ALJ determined that Williams is able to perform his past work as a custodian.[46] Because he determined that Williams is able to perform his past work, the ALJ concluded that Williams is not disabled.[47]

**C. Williams's Allegation of Error**

Williams doesn't quarrel with his "date last insured" or the ALJ's step one through three determinations. He challenges only the ALJ's step four determination that he can perform his past work. Williams relies on a letter in which his treating physician—Dr. Mark Burns—states, "In my professional opinion, [Williams] would find it extremely difficult, if not impossible, to engage in similar or other employment without serious detriment to his health."[48] This statement refers to Williams's last job as a custodian. Williams maintains that the ALJ should have given this opinion controlling weight over the opinion of Dr. Raymond O. Henke because unlike Dr. Henke, Dr. Burns is a psychiatrist rather than a psychologist. Williams contends that a psychologist is unqualified to address psychiatric problems like his bipolar disorder. There are several reasons why this argument fails.

First, Dr. Burns's opinions do not address the relevant time period. Williams' DIB insured status expired on December 31, 2003. The ALJ correctly observed that Dr. Burns's

---

[46]*Id*. at p. 17.

[47]*Id*. at p. 18.

[48]*Id*. at p. 132.

opinions originated after that time.[49]  Although Dr. Burns treated Williams in the early 1990s, Williams "dropped out of treatment" around 2000.[50]  During that time, Williams worked—with his parents' support—as a custodian at a college student center.[51]  Dr. Burns explained that although he prescribed Lithium to treat Williams's bipolar disorder, Williams choose to take Lithium only intermittently and to rely on "yoga, mediation and other eastern religious practices" to assist him with mood instability.[52]  A couple years after the death of his father—Williams's mother had died several years before—Williams began having problems with anxiety and reacted negatively to Zoloft which had been prescribed by another doctor.[53]  Williams sought Dr. Burns's assistance, believing that he could help him.[54]  Williams returned to Dr. Burns on April 4, 2004[55]—several months after Williams insured status expired.  Four months later—over seven months after Williams's last date insured—Dr. Burns wrote the letter that Williams's relies upon to support his assertion that he can no longer work.  Three months later, Dr. Burns's completed a Medical Source Statement of Ability.[56]  In the statement, Dr. Burns's reported that Williams has the following limitations: moderately restricted in the ability to interact with the public;

---

[49]*Id*. at p. 16.

[50]*Id*. at p. 150.

[51]*Id*. at pp. 207-8.

[52]*Id*. at p. 150.

[53]*Id*. at pp. 150 & 217.

[54]*Id*. at pp. 69 & 217.

[55]*Id*. at p. 150.

[56]*Id*. at p. 171-2.

moderately restricted in the ability to interact with supervisors; markedly restricted in the ability to interact appropriately with co-workers; markedly restricted in the ability to respond appropriately to work pressures in a usual work setting; and markedly restricted in the ability to respond appropriately to changes in a routine work setting.[57] Although these restrictions limit a person's ability to work, the supporting opinions fall outside the relevant time period—the time between Williams's alleged onset date of January 1, 2003 and his last date insured of December 31, 2003. Because Dr. Burns did not treat Williams during the relevant time and because his opinions do not address the relevant time period, Dr. Burns's opinion that Williams is unable to work in his former capacity without seriously jeopardizing his health is irrelevant to the determination of whether Williams is disabled.

     Another reason Williams's argument fails is because Dr. Burns's opinion that Williams is unable to work is inconsistent with his own opinions. On the day Dr. Burns completed the Medical Source Statement of Ability, his treatment notes reflect a global-assessment-of-functioning (GAF) score of 58-64.[58] According to the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR),[59] a GAF assessment of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."[60]

---

[57]*See id.* at p. 171.

[58]*Id.* at p. 168.

[59]Am. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 27 (4th ed., text revision, 2000) (hereinafter DSM-IV-TR).

[60]*See* DSM-IV-TR at 34.

Yet Dr. Burns reported only two areas of moderate restriction and three areas of marked restriction on the Medical Source Statement of Ability.  Three areas of marked restriction is inconsistent with a GAF assessment of moderate symptoms.

A third reason that Williams's argument fails is because Dr. Burns's opinion is inconsistent with other substantial evidence in the record—in particular, Dr. Henke's Report of Psychological Evaluation.[61]  Dr. Henke examined Williams on December 22, 2003[62]—prior to the expiration of Williams's insured status—at the request of the Texas Rehabilitation Commission (TRC).[63]  Dr. Henke reported that Williams told him that he had seen a psychiatrist or psychologist in the early 1980s and was diagnosed with bipolar disorder, an illness Williams felt was in remission.[64]  Williams reported that he had taken Lithium, but stopped taking it at the end of the 1990s.[65]  At the time of Dr. Henke's examination, Williams had not taken medication for his bipolar disorder for six years.[66]  On the GAF scale, Dr. Henke assessed Williams at 55[67]—a score fairly consistent with Dr. Burns's later assessment—but opined that Williams "has

---

[61]SSA record, pp. 97-104.

[62]*Id*. at p. 97.

[63]The TRC is "the state's principal authority on the vocational rehabilitation of Texans with disabilities. . . . TRC's main purpose is to assist people with disabilities to participate in their communities by achieving employment of choice, living as independently as possible and accessing high quality services." *See* TEX. SERVICES: SUPP. TO THE 2000 BIENNIAL REP., TEX., COUNCIL FOR DEVELOPMENTAL DISABILITIES ¶ 1.5 (May 2000), *available at* www.txddc.state.tx.us, click on resources and then on biennial reports.

[64]SSA record, p. 98.

[65]*Id*.

[66]*Id*.

[67]*Id*. at p. 102.

potential for many types of training or educational programs,"[68] Williams's "vocational prognosis appears to be fair at this time,"[69] Williams "appears to be capable of working at some technical or professional level after training,"[70] and Williams "has adequate abilities to do skilled jobs after appropriate training."[71] Dr. Henke indicated, however, that Williams "would have difficulties meeting his potential" without vocational rehabilitation assistance and help from the TRC.[72]

      Dr. Burns's opinion that Williams cannot perform his further work is also inconsistent with the testimony of the vocational expert. On cross-examination, the vocational expert explained that limitations such as Williams's limitations—moderate restrictions in ability to interact with the public, moderate restrictions in ability to interact appropriately with supervisors, marked limitation in interacting with co-workers, and marked limitation in responding to changes in the work setting—would not rule out unskilled cleaning positions because those jobs can be fairly solitary and routine in nature with almost no changes in work settings.[73] The vocational expert also testified that a person with such limitations could perform other jobs as well.[74]

      Finally, Williams's record of caring for himself and his aged father prior to the expiration of his last date insured contradicts Dr. Burns's opinion that Williams's cannot work in his former

---

[68] *Id.* at p. 101.

[69] *Id.* at p. 103.

[70] *Id.*

[71] *Id.*

[72] *Id.* at p. 104.

[73] *Id.* at p. 226.

[74] *Id.* at p. 227. The other jobs that the vocational expert identified are machine tending positions, light and unskilled; and conveyor line tender, light and unskilled. *Id.* at pp. 228-30.


capacity. With his parents' support, Williams earned a bachelor's degree, held his job as a school custodian for almost nine years, quit his job—not because of his bipolar disorder, but to care for his aging father,[75] – believed his mental illness was in remission,[76] and has been keenly mindful of how to care for himself and his home.[77]  Williams questions his ability to support himself in the absence of his parents,[78] but he has demonstrated the ability to do so.  Williams is not disabled under the Act.

## VI. Recommendation

Because substantial evidence supports the ALJ's decision that Williams could perform his past work during the relevant time period, I recommend that Williams's request for relief (docket entry # 4) be DENIED and that the Commissioner's decision denying Williams's benefits be AFFIRMED.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless

---

[75]*Id*. at p. 202.

[76]*Id*. at p. 74.

[77]*Id.* at pp. 81-6 & 198-202.

[78]*Id*. at pp. 205-6.

this time period is modified by the district court.[79]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[80]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[81]

   **SIGNED** on September 14, 2007.

                                              _____
                                              NANCY STEIN NOWAK
                                              UNITED STATES MAGISTRATE JUDGE

---

   [79]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

   [80]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

   [81]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).